| | | |
|---|---|---|
| **United States of America** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  1:25-CR-10-RDB** |
| | : | |
| **Jose Lopez-Guevara** | : | |
| | : | |
| **Defendant** | : | |

**Defendant's Reply to Government's Response (ECF No. 95) on *Daubert*
Motion to Exclude Exemplars and Testimony of Hand Image Comparison,
Identification Testimony of Dr. Michelle Chudow, and Gregory Squire's
Proposed Expert Witness Testimony**

In its response to Mr. Lopez-Guevara's *Daubert* challenges and objection to testimony, the government side-steps the main issue.  It quotes an old version of Federal Rule of Evidence 702—and proceeds to reason based on case law that predates the most recent amendments to that rule.  *See* Gov'ts Br. at 2 (quoting version of Fed. R. Evid. 702 that lacks language regarding the government's burden by a preponderance of the evidence and that an "expert's opinion [must] reflect[] a reliable application of" principles and methods).  The government puts a lot of weight on authorities that are inapposite to the issue at bar, or while relevant, reveal an absence of objections from defense counsel or considered review by appellate courts.

As an example, it cites to *Offill,* a case about whether an expert could testify in a securities case, when his opinion seemed close to the ultimate issue.  There, the court concluded that "the specialized nature of the legal regimes involved in this case and the complex concepts involving securities registration, registration exemptions, and specific regulatory practices make it a typical case for allowing expert testimony

that arguably states a legal conclusion in order to assist the jury." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011). But it reasoned that "[t]he jury in this case needed to understand not only federal securities registration requirements but also the operation of several obscure Texas Code provisions and their relationship with the federal regime." *Id.* As numerous courts—even within the government's cited authorities—recognize, the hand and mark comparisons in this case cannot be further removed from the type of expert testimony that might assist a jury.

**Vogeler Testimony**

The government's reliance on *United States v. Crisp*, 324 F.3d 261 (4th Cir. 2003) aims to collapse the distinction between fingerprinting analysis and the hand comparison analysis that it seeks to admit at this trial. The two examinations are not the same—and fingerprint evidence is not at issue in this case. *Crisp*, notably, allowed the admission of fingerprint expert testimony based on the longevity of its acceptance in federal courts, which goes back to 1936 for fingerprints. *Id.* at 265. But even then, *Crisp* attempted to find an error rate in the proposed expert's testimony. *Id.* at 269.

Still, the dissent in *Crisp* made keener observations that stand the test of time. The dissenting judge explained that a long history of acceptance and error rates based on assumptions, in his view, harkened back to the old *Frye* standard and undermined the commandments of *Daubert*. *Id.* at 272 (Judge M. Blane Michael, dissenting). He presaged the amended version of Federal Rule of Evidence 702 that now controls. In this regard, it is also worth noting that cases relying on *Crisp* have also sought to

stress reliance on low error rates. Notably, cases relying on *Crisp* haven taken pains to emphasize the low "error rates" associated with fingerprint analysis (and documented in a robust literature). *See United States v. Rose*, 672 F.Supp. 723, 726 (D. Md. 2009).

More importantly, the government's analysis falters when it directs the Court's attention to instances where other districts have admitted hand comparison analysis. In *United States v. Legs*, 3:19-CR-30073-RAL, 2020 U.S. Dist. LEXIS 166645 (S.D. Sept. 11, 2020), an expert witness testified regarding knuckle comparisons. But that opinion reveals nothing about the district court's *Daubert* analysis. Meanwhile, tracing the case history through appellate review shows that the expert testimony received something less than a ringing endorsement. The Eighth Circuit bypassed an abuse of discretion review because "even absent [the expert's] testimony, the government provided overwhelming evidence of Red Legs's guilt." *Red Legs*, 28 F.4th at 935. The government had eyewitnesses and inculpatory statements. *Id.* Also, the Eighth Circuit stressed that even "a layperson examining the two sets of photos could discern similarities between the fingers in the explicit photos and the fingers in the known photos of Red Legs." *Id.* at 936.

In *United States v. Ricker*, 983 F.3d 987(8th Cir. 2020), the defendant did not challenge the admission of the hand testimony on *Daubert* grounds. Instead, he argued that the government had not complied with a disclosure deadline. *Id.* at 996-997. The Eighth Circuit found that because no deadline had been set in the case, and the government did not act in reckless disregard, that it would admit the

testimony. That situation is very distinct from the facts of this case—where the parties have agreed to a deadline, which the court accepted, and the defense has filed an objection. *See* E-mail from Paul E. Budlow, Assistant United States Attorney, to John Perryman, Law Clerk to the Hon. Richard D. Bennett, (Mar. 19, 2026) (on file with author).

In *Merrell*, the district court admitted the hand comparison absent advance briefing on the issue—leaving it with insufficient guidance. *See United States v. Merrell*, No. 14-CR-358 (D. Minn). On appeal, the Eighth Circuit rested on the overwhelming weight of the evidence to overcome an abuse of discretion standard and to apply harmless error:

> Assuming *Merrell* is correct that the district court abused its discretion by failing to exclude Agent Cole's testimony, this failure was harmless. Improperly admitted testimony warrants reversal of a conviction if the testimony "substantially influence[d] the jury's verdict." *United States v. Iron Hawk*, 612 F.3d 1031, 1039 (8th Cir. 2010). Agent Cole's testimony [*583] could not have substantially influenced the jury's verdict here because of the overwhelming evidence provided by the government of Merrell's guilt. Most important was Merrell's confession which had been captured on tape by law enforcement officers. In that tape, she admitted that she had produced the child pornography at issue and that the adult hands visible in the photographs were hers. Merrell's confession was corroborated by evidence of the phone records between Merrell and Guenthner around the time the photographs were produced. Since substantial evidence other than Agent Cole's testimony supported the jury's verdict, its improper admission does not warrant reversal for a new trial. *See id.*; s*ee also United States v. Oliver*, 908 F.2d 260, 264 & n.3 (8th Cir. 1990).

*United States v. Merrell*, 842 F.3d 577, 582-583 (8th Cir.2016). A confession, as this Court has noted in previous proceedings, "is the most powerful piece of evidence the State can offer, and its effect on a jury is incalculable." *See People v. Simpson*, 25

N.E.3d 601, 611 (Ill. 2015); *Arizona v. Fulminante,* 499 U.S. 279, 296 (2011) ("A confession is like no other evidence.") Considering that overwhelming evidence, the errant admission of expert testimony would not warrant much consideration.

In *Richards*—as the government concedes—the *Daubert* challenge to the hand comparison testimony was raised for the first time on appeal. Gov't Br. at 9 (citing to *United States v. Richards*, ACM 38346, 2016 CCA LEXIS 285 (A.F.C.C.A., May 2, 2016)). This matters because the reviewing court applied one of the most restrictive standards of review. *Richards,* 2016 CCA LEXIS 285, at *177. ("Under a plain error analysis, we find no error in admitting Mr. Iber's testimony.") Still, the court noted that "the record is not well developed as to whether techniques used in Mr. Iber's comparison analysis are sufficiently reliable under that standard." *Id.* at 180. Against this stringent standard and an underdeveloped record, the court safeguarded its conclusion with the observation that "[a] layperson's examination of the two sets of photographs easily reveals similarities between the hands depicted in each set." *Id.*

Absent a meaningful response, the Court should hold an evidentiary hearing to test the propositions that escaped notice in *Legs, Ricker, Merrell,* and *Richards*.

**<u>Dr. Chudow Testimony</u>**

The government presses the case that Dr. Michelle Chudow is qualified based on her medical training to make identifications as between Homeland Security Investigation evidence and the ███████████████████████████████████. It points to *Primero v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), mainly for the proposition

that her medical training exempts her from the strictures of *Daubert* and Federal Rule of Evidence 702's strict demands on scientific evidence. But the case it cites involves a doctor who had published extensively on the subject (an elbow replacement prosthetic) for which he planned to offer testimony:

> Dr. Weiss is a board certified orthopedic surgeon and a professor at Brown University School of Medicine in the Division of Hand, Upper Extremity and Microvascular Surgery, department of Orthopedics. He has published over a hundred articles in peer-reviewed medical journals including several specifically on the elbow and at least one somewhat related to this case, "Capitellocondylar Total Elbow Replacement: A Long-Term Follow-up Study." 44 He has years of experience implanting various elbow prosthetics and has performed five to ten revisions of total elbow replacements that had been performed by other physicians. He has examined the various types of prosthetics available, and has maintained familiarity with the peer-reviewed literature. He testified that the very short lifespan of Ms. Primiano's artifical (*sic*) elbow is "outside of my review of the known literature." He conceded on cross examination that there was "no published peer-reviewed article that [I'm] aware of that states a strict minimum lifespan of a polyethylene component in a total elbow system," but explained that "I wouldn't expect any literature, because you don't see it. It's hard to write a paper about something that doesn't occur. I mean, this is really bizarre."

*Id.* Marks and scars occur with a great degree of frequency, and so, the question is how Dr. Chudow is more qualified than a lay person to observe a picture and say with certainty and conviction that the mark or scar correlates to a particular person. Studying marks and scars, based on a wide database of available photographs on open internet sources, is within the realm of possibility—it is not "really bizarre."

In other words, an expert's opinion should still be excluded, even if it invokes a generally reliable area of science or expertise, if that technique cannot be reliably applied to the particular facts of the case. *E.g., Acosta v. Vinoskey*, 310 F. Supp. 3d 662, 670 (W.D. Va. 2018) (finding expert testimony inadmissible because the

methodology was both unreliable and could not be reliably applied to facts of case). For example, a methodology about whether a particular chemical increases the chances of cancer in an animal might be reliably sound in that context, but cannot be reliably applied to ascertain the chances of cancer in humans. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 743 (3rd Cir. 1994).

**<u>Squire Testimony</u>**

The defense renews its objection to Mr. Squire's testimony. Additionally, it advises the Court that the government has recently furnished more information indicating that he is indeed being offered to testify as an expert. *See* Letter from Paul E. Budlow, Assistant United States Attorney, to Franciso A. Carriedo and Gabriel Reyes, Assistant Federal Public Defenders (Apr. 1, 2026) (Exhibit A). Lay witness testimony would not allow Mr. Squire to testify concerning retrieving specific items from the Darkweb, absent the introduction of hearsay into the trial proceedings.

Finally, Mr. Lopez-Guevara strongly objects to the statement that there was no expert disclosure deadline in this case. The parties agreed to a deadline and confirmed that understanding with the Court. The government did not disclose Mr. Squire's testimony in a timely manner and certainly did not fully inform the defense about his work until March 26, 2026. ███████████████████████

███████████████████████████████████████████████

██████████████████████████████████

Respectfully submitted,
James Wyda
Federal Public Defender
for the District of Maryland

\_\_\_/s/_____
Gabriel Reyes
Francisco A. Carriedo (#816158)
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax:  (410) 962-3976
Email: Gabriel_Reyes@fd.org
        Francisco_Carriedo@fd.org

# CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2026, a copy of the foregoing was served via CM/ECF to the Government.

_____/s/_____
Gabriel Reyes